**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA AUGUSTA DIVISION**

U.S. DISTRICT COURT SOUTHERN DISTRICT OF GEORGIA
NOV 13 2026
FILED

| | | |
|---|---|---|
| DAVID AGAM, | * | |
| Plaintiff, | * | |
| v. | * | CV 125-225 |
| FRANK BISIGNANO, Commissioner of Social Security Administration, | * | |
| Defendant. | * | |

**O R D E R**

Plaintiff, proceeding *pro se* and *in forma pauperis*, appeals the determination of the Commissioner of Social Security ("the Commissioner") not to reopen a prior benefits decision. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **DISMISSES** this case based on lack of subject-matter jurisdiction.[1]

## I. BACKGROUND

Plaintiff applied for Disability Insurance Benefits ("DIB") on September 19, 2016. TR. ("R."), p. 209. For unclear reasons, Plaintiff filed two requests for reconsideration in January and February of 2017, before the Social Security Administration ("SSA") ruled on his application. R. 94, 205, 231-237.[2] Both

[1] Plaintiff has filed a Motion to Expedite Ruling and a Motion for Status, requesting an update on his case. (See docs. 20, 21.) Because the Court is dismissing Plaintiff's case, these motions are **DENIED as MOOT.**

[2] One request appears twice in the record. R. 94, 205.

requests argued he was entitled to DIB because he was blind and his shoulder was injured. R. 205, 232. The record reflects that the SSA rendered a decision about these requests on July 6, 2017, although the decision itself does not appear in the record. R. 217.

On September 1, 2017, the SSA notified Plaintiff of its determination that Plaintiff became disabled on March 31, 2015, and that he was entitled to DIB (the "2017 Decision"). R. 74. Then, the SSA sent Plaintiff a letter on November 16, 2017, discussing the DIB payments he would receive retroactive from the 2017 Decision to the date he became disabled. R. 197-99. The letter stated the SSA had been withholding Plaintiff's DIB back-payments since the 2017 Decision because their "records showed [Plaintiff] *could* have been getting Supplemental Security Income." R. 197 (emphasis added). It continued: "Our records show that you did not get SSI money from September 2015 through August 2017. We can refund all the Social Security money withheld." Id. The letter also explained Plaintiff's monthly DIB payments would continue per the 2017 Decision.[3] Id. On February 2, 2018, the SSA sent Plaintiff another correspondence. R. 84. This letter notified Plaintiff that he would no longer receive DIB, but would

[3] Notably, the letter did not say Plaintiff was entitled to SSI. Rather, the SSA's records show Plaintiff was never entitled to SSI. R. 217

instead receive retirement benefits, because he had reached full retirement age. Id.

Nearly five years after the 2017 Decision, on July 12, 2022, Plaintiff submitted a request for reconsideration to the SSA, listing the issue being appealed as "underpayment of SSDI and miscalculation of retirement benefit [sic]." R. 86. Along with the request, he attached a letter that argued the SSA incorrectly calculated his DIB and the date he became disabled in the 2017 Decision because they did not consider his blindness, and they ignored appeals he had filed. R. 87-94. In its May 13, 2023, ruling on the request, the SSA declined to reconsider the 2017 Decision or Plaintiff's date of entitlement to DIB because Plaintiff did not appeal the 2017 Decision within 60 days, and no special circumstances warranted reopening the prior decision. R. 95-101. The SSA also found Plaintiff was receiving the correct monthly payment amount. Id. Thereafter, Plaintiff requested a hearing with an administrative law judge ("ALJ"). R. 103.

After a failed attempt to conduct a telephone hearing, Plaintiff, along with his wife, attended an in-person hearing with an ALJ on May 14, 2024. R. 20, 157. The ALJ informed Plaintiff at the hearing of his right to representation and asked him if he understood.[4] R. 25-26. Plaintiff confirmed he understood and stated

[4] The SSA also informed Plaintiff of his right to representation in three correspondences before the hearing. R. 115, 135, 162.

he would like to proceed without representation. R. 26-27. Then, the ALJ discussed with Plaintiff each document in the record. R. 34-39. Plaintiff, with the help of his wife, agreed the documents in the record were properly included in it, so the ALJ admitted them into evidence. R. 41.

The ALJ also discussed with Plaintiff the appeals Plaintiff claimed were missing from the record. R. 44-46, 51-52, 58, 60, 64. Before he was under oath, Plaintiff stated he appealed the SSA's determination that he was not blind about 10 days after receiving it, and the SSA told him they were "taking care of it." R. 44. He and his wife also asserted that they sent the same appeal repeatedly every three to four months in 2017 and 2018. R. 45. When the ALJ asked Plaintiff if he had documentation of these appeals, Plaintiff's wife stated that she had already submitted copies of them to the ALJ. R. 45-46. As the ALJ did not see the copies in the record, she told Plaintiff he could submit any evidence he had of them to her office until the end of May, and they would be added to the record. R. 51. She also stated she would go back through the record to double-check for the appeals. R. 52.

Later, when Plaintiff was under oath, the ALJ asked him if he had appealed the 2017 Decision within a month, and he stated he had. R. 58, 60. The ALJ reiterated she did not have evidence of that appeal, but she concluded the hearing by stating Plaintiff could send additional evidence to her and she would consider it. R. 64,

70. Aside from the conversation about missing appeals, Plaintiff and the ALJ also discussed Plaintiff's other grievances, including that his DIB was not properly converted to retirement; that he should have been awarded more DIB because of his blindness; and that the SSA should consider a workers compensation settlement he received before he was disabled in calculating his monthly payments. R. 53-63.

The ALJ issued her decision on November 13, 2024 (the "2024 Decision"). R. 8-15. She declined to consider "issues raised by the claimant relating to appeal [sic] his date of entitlement to disability benefits, such as onset date, reopening of a prior application, and/or severe impairments." R. 13. She explained:

> The claimant filed the request for hearing significantly more than 65 days after the date of the notice of reconsideration determination, and the claimant has not established that he did not receive this determination within 5 days of this date. Accordingly, the request for hearing was not filed within the relevant time period. There is no evidence submitted of fraud or similar fault, and the appeal was filed well after the timeframe for good cause.

Id.

The ALJ also found that Plaintiff's DIB was appropriately converted to retirement benefits in 2018; it was not necessary to reexamine the issue of Plaintiff's blindness because it would not change his DIB or retirement entitlement; and the settlement Plaintiff received in 2010 was rightfully not counted as earnings to calculate his DIB and retirement payments. R. 13-14. Thus, she

concluded he was receiving the correct monthly payment amount. R. 15.

On January 4, 2025, Plaintiff appealed the 2024 Decision to the SSA Appeals Council. R. 187-206. The Appeals Council denied Plaintiff's request for review, stating it found "no reason" to review the 2024 Decision. R. 1. Plaintiff then filed this suit, proceeding *pro se* and *in forma pauperis*, and seeking judicial review of the 2024 Decision under 42 U.S.C. § 405(g). (Docs. 1, 4.)

Plaintiff argues the ALJ should have considered the issues related to the 2017 Decision that she declined to reopen: his blindness, retroactive payment amount, and disability onset date. Pl.'s Br., doc. 13, at 6-7. However, Plaintiff does not challenge the ALJ's determination that his DIB was appropriately converted to retirement or that his 2010 settlement should not be counted as earnings. Id. In response, the Commissioner of Social Security (the "Commissioner") contends that the Court lacks jurisdiction over this case. Comm'r's Br., doc. 17, at 4-8. Specifically, the Commissioner argues that the determination not to reopen the 2017 Decision is not a "final decision" that the Court can review. Id. In reply, Plaintiff argues the Court has jurisdiction because his constitutional rights were violated and the ALJ *de facto* reopened the 2016 Decision. Pl.'s Reply, doc. 19, at 1-2.

## II. DISCUSSION

Under 42 U.S.C. § 405(g), a federal court only has subject-matter jurisdiction to review a "final decision of the [Commissioner]." Cash v. Barnhart, 327 F.3d 1252, 1255 (11th Cir. 2003) (*per curiam*) (quoting 42 U.S.C. § 405(g)). A determination not to reopen a prior decision is not such a "final decision." See 20 C.F.R. § 404.903(l) (providing that an administrative decision "[d]enying [a] request to reopen a determination or a decision" is "not subject to judicial review"); Cash, 327 F.3d at 1256 ("a decision refusing to reopen an earlier application ordinarily is considered an interim decision not reviewable under § 405(g).") Thus, the Court can review the determination not to reopen the 2017 Decision only if at least one of two exceptions apply: (1) Plaintiff raises a colorable constitutional claim or (2) the ALJ in fact reopened and reconsidered the merits of the 2017 Decision. See Cash, 327 F.3d at 1256, 1257 n.8. Plaintiff argues both exceptions apply. Pl.'s Reply, at 1-2. Neither does.

### A. Plaintiff Does Not Raise a Colorable Constitutional Claim

Under the first exception, the Court may review the Commissioner's decision to not reopen if Plaintiff raises a colorable constitutional claim. See Brown v. Sullivan, 921 F.2d 1233, 1237 (11th Cir. 1991); Sherrod v. Chater, 74 F.3d 243, 245 (11th Cir. 1996) (*per curiam*) ("[J]udicial review may be had where the claimant raises a colorable constitutional issue, because constitutional

questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." (internal quotations and citations omitted)). While Plaintiff alleges his due process rights were violated both before and at the hearing, Pl.'s Reply, at 1-4, he does not raise a colorable constitutional claim.

**1. Alleged Due Process Violations Before the Hearing**

Plaintiff alleges the SSA violated his right to due process in two ways long before the hearing. First, Plaintiff claims the SSA told him he qualified for SSI in its 2017 letter but did not pay him SSI. Pl.'s Reply, at 1; (See doc. 1, at 8.) Second, he argues the SSA "lost or ignored [his] timely filings" of appeals he filed in 2017 and 2018. Pl.'s Br., at 4-5; Pl.'s Reply, at 1, 4. Neither of these claims confer jurisdiction over this case.

To confer jurisdiction to review a decision not to reopen, "[t]he constitutional issue must concern the proceeding at which the decision not to reopen was made. Otherwise, constitutional claims arising out of an administrative proceeding could be preserved indefinitely through requests to reopen." Cherry v. Heckler, 760 F.2d 1186, 1190 n.4 (11th Cir. 1985) (superseded on other grounds by 20 C.F.R. § 404.1520(a) (1992), as recognized in Passopulos v. Sullivan, 976 F.2d 642, 645-646 (11th Cir. 1992). Thus, Plaintiff's claimed due process violations must concern the hearing - the

proceeding at which the 2024 Decision was made – to confer jurisdiction over this case.

Plaintiff's alleged due process violations about SSI eligibility and missing appeals do not concern the hearing because they relate instead to a letter about, and appeals of, the 2017 Decision. See Hunter v. Comm'r of Soc. Sec., No. 22-13102, 2023 WL 5605841, at *3 (11th Cir. Aug. 30, 2023) (*per curiam*) (finding the SSA's alleged failure to compile medical records during a previous benefits proceeding in 2012 did not concern a latter decision in 2021 not to reopen the 2012 proceeding). Since neither alleged due process violation concerns the hearing, they cannot confer jurisdiction to review the Commissioner's decision not to reopen. See id. (citing Cherry and finding no jurisdiction to review the Commissioner's decision not to reopen a prior determination when plaintiff's constitutional claim related to her first disability application); Kimbril v. Soc. Sec. Admin., Comm'r, No. 22-11992, 2023 WL 3487764, at *2 (11th Cir. May 17, 2023) (*per curiam*) (same).

Even if these purported due process violations concerned the hearing, they are still not colorable because Plaintiff points to no evidence they occurred. The mere allegation of a due process violation, without any supporting evidence, is not sufficient to raise a colorable constitutional claim. Jones v. Dep't of Health & Hum. Serv., 941 F.2d 1529, 1533 (11th Cir. 1991) (*per curiam*); see also Campbell v. Astrue, No. 3:11CV326/RV/EMT, 2012 WL 2848898, at

*6 (N.D. Fla. June 11, 2012), report and recommendation adopted, No. 3:11CV326/RV/EMT, 2012 WL 2849214 (N.D. Fla. July 11, 2012) (explaining, to establish jurisdiction over a decision not to reopen, "[t]he burden is on Plaintiff to affirmatively demonstrate a sufficient basis for a constitutional claim, and a mere allegation that his constitutional rights have been violated is not enough." (collecting cases)). Here, Plaintiff has provided no evidence showing the SSA told him he was entitled to SSI or lost his timely appeals, nor has he pointed to any in the record. See Pl.'s Br.; Pl.'s Reply. These two due process claims are therefore not colorable. See Sweat v. Astrue, No. 1:11-CV-57 WLS, 2012 WL 4094278, at *2 (M.D. Ga. Sept. 17, 2012) (finding no colorable constitutional claim when there was no evidence of the due process violation plaintiff alleged, other than vague witness testimony).

**2. Alleged Due Process Violation at the Hearing**

Plaintiff also argues the ALJ violated his right to due process at the hearing because she did not adequately develop the administrative record in light of his *pro se* status. See Pl.'s Br., at 7; Pl.'s Reply., at 1. A claimant has the burden of proving his disability and is responsible for providing evidence in support of his claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (*per curiam*). Nevertheless, "because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." Larry v. Comm'r of Soc. Sec., 506

F. App'x 967, 969 (11th Cir. 2013) (*per curiam*) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). In developing that full and fair record, the ALJ must make sure the record contains sufficient evidence to make an informed decision. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007); Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984) (*per curiam*); George v. Astrue, 338 F. App'x 803, 805 (11th Cir. 2009) (*per curiam*); Jenkins v. Colvin, No. CA 2:12-00465-N, 2013 WL 3465190, at *3 (S.D. Ala. July 10, 2013) (collecting cases).

"Although an ALJ has a 'special duty' to develop the record where the claimant is unrepresented, that heightened duty does not apply where the claimant has waived her right to counsel." Crawley v. Berryhill, No. 8:17-CV-2218-T-CPT, 2019 WL 1417325, at *5 (M.D. Fla. Mar. 29, 2019) (citing Robinson v. Astrue, 235 F. App'x 725, 727 (11th Cir. 2007) (*per curiam*)); see also Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (*per curiam*) ("A Social Security claimant has a statutory right, *which may be waived*, to be represented by counsel at a hearing before an ALJ" (citing Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (*per curiam*) (emphasis added)). Here, the SSA notified Plaintiff about his right to representation and told him he could obtain free representation three times before the hearing. R. 115, 135, 162. Further, Plaintiff waived his right to counsel at the hearing after the ALJ explained it and Plaintiff affirmed he understood. R. 25-27. Thus, "because

[Plaintiff] waived counsel, the ALJ did not have a special duty to develop the record." Robinson, 235 F. App'x at 727; see Coven v. Comm'r of Soc. Sec., 384 F. App'x 949, 950-951 (11th Cir. 2010) (*per curiam*) (finding Plaintiff voluntarily waived her right to representation when she received multiple notices about it and executed a written waiver of it after discussing with ALJ).

Because Plaintiff waived his right to counsel, and he failed to supplement the record with evidence he claimed was missing, the ALJ did not fail in her duty to develop the record. The ALJ discussed the documents in the record with Plaintiff, and she gave him an opportunity to supplement the record with any other information he wanted her to consider. R. 34-39, 51, 70. There is no indication in the record that Plaintiff submitted any additional information to the ALJ after the hearing, and he does not claim to have done so. See Pl.'s Br.; Pl.'s Reply. Thus, the ALJ did not fail in her duty to develop the record because she gave Plaintiff a chance to supplement the record and he did not. See Robinson, 235 F. App'x at 727 (explaining "the ALJ did not fail to fully and fairly develop the record" when *pro se* Plaintiff who waived his right to representation failed to produce allegedly missing records after the ALJ gave him an opportunity to do so).

Even if the ALJ failed in her duty to develop the record, Plaintiff does not have a colorable due process claim because he has not shown prejudice. "[T]here must be a showing of prejudice before

it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." Graham, 129 F.3d at 1423 (citing Brown, 44 F.3d at 934-35). Generally, there is no prejudice when there is "sufficient evidence" in the record that allows the ALJ "to make an informed decision." Brock v. Comm'r, Soc. Sec. Admin., 758 F. App'x 745, 748 (11th Cir. 2018) (*per curiam*) (quoting Ingram, 496 F.3d at 1269). When deciding whether a showing of prejudice has been made, the Court should consider "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Brown, 44 F.3d at 935 (quoting Smith v. Schweiker, 677 F.2d 826, 830 (11th Cir. 1982)).

Plaintiff was not prejudiced because the ALJ had sufficient evidence to decline to reopen the 2017 Decision. Plaintiff appealed the 2017 Decision in 2022. R. 86. The ALJ found this request was not timely filed, and no exception permitted review. R. 13. Because she considered the 2017 Decision, the date of Plaintiff's appeal, and the applicability of exceptions, the ALJ based her decision on sufficient evidence. See Annette S. v. Comm'r, Soc. Sec. Admin., No. 1:20-CV-00175-RDC, 2021 WL 9721050, at *4 (N.D. Ga. Aug. 13, 2021) (holding the ALJ based her decision not to reopen a prior decision on sufficient evidence when she made repeated references to the prior decision); see also Holland v. Heckler, 764 F.2d 1560, 1562-63 (11th Cir. 1985) (*per curiam*) (finding *pro se* plaintiff did

not have a colorable due process claim based on the ALJ's alleged failure to develop the record when the evidence the ALJ considered was sufficient to lead to a decision, even if more information might have changed the outcome).

Additionally, Plaintiff was not prejudiced because he has not identified gaps in the record. While he claims generally that the SSA lost his timely appeals, Pl.'s Br., at 6; Pl.'s Reply, at 3-4, the record contradicts this claim. Only two requests for reconsideration appear in the record from before July of 2022, when Plaintiff submitted the appeal that initiated this case. R. 86. Plaintiff filed these requests in January and February of 2017.[5] R. 205, 231. The SSA did not lose these appeals because the record shows the SSA rendered a decision about them in July of 2017. R. 217. Moreover, these requests therefore could not have been timely appeals of the 2017 Decision because they predate it. R. 74, 205, 231. Since Plaintiff has not identified gaps in the record, and the record reflects none, Plaintiff has not shown he was prejudiced by any alleged failure to develop the record. See Smith, 677 F.2d at 830 (finding no prejudice when "the record as a whole reveals that no relevant facts, documents, or other evidence were omitted from the

[5] One request for reconsideration in the record is undated. R. 80. However, attached to that request is a letter from the SSA that discusses Plaintiff's tax withholding as of November 17, 2022. R 81. Thus, it seems Plaintiff filed this request for reconsideration after he filed his July 2022 appeal.

ALJ's consideration or his findings."); Graham, 129 F.3d at 1423 (holding plaintiff failed to show prejudice from gaps in the record when the ALJ questioned her extensively and plaintiff failed to point to anything in the record showing additional missing evidence); Williams v. Saul, No. 5:18-CV-158-MJF, 2019 WL 4280055, at *14 (N.D. Fla. Sept. 9, 2019) (noting "*Plaintiff* must show" evidentiary gaps in the record to show prejudice, and finding Plaintiff failed to do so (emphasis added)). Thus, none of Plaintiff's due process claims are colorable. The Court therefore cannot review the Commissioner's decision not to reopen the 2017 Decision under the exception for colorable constitutional claims. See Sherrod, 74 F.3d at 246-47 (affirming district court's conclusion that it lacked jurisdiction when Plaintiff failed to show a colorable constitutional claim).

**B. The ALJ Did Not *De Facto* Reopen the 2017 Decision**

Alternatively, a Court may review the Commissioner's decision not to reopen a prior decision if the ALJ "in fact reopened and reconsidered" the merits of the prior decision. Cash, 327 F.3d at 1256 (citing Sherrod, 74 F.3d at 245). Such *de facto* reopening "requires an actual reconsideration of the merits, not just an intent to reconsider." Bello v. Comm'r of Soc. Sec., 460 F. App'x 837, 841 (11th Cir. 2012) (*per curiam*) (citing Cash, 327 F.3d at 1256-57). "If the Secretary merely considers newly proffered evidence without reconsidering the merits of the previously denied application, then

he has not reopened that application." Brown v. Sullivan, 921 F.2d 1233, 1237 (11th Cir. 1991) (citing Cherry, 760 F.2nd at 1189).

Here, the ALJ said she would "consider only the amount of [Plaintiff's] ongoing benefits payments," and that she would not reopen or reconsider "issues raised by the claimant relating to appeal [sic] his date of entitlement to disability benefits, such as onset date, reopening of a prior application, and/or severe impairments." R. 13. She then explained Plaintiff was receiving the correct monthly payment because the SSA correctly converted Plaintiff's DIB to retirement benefits in 2018; Plaintiff's alleged blindness could not change the amount of his DIB payments; and the SSA did not consider workers compensation in determining DIB. R. 13-15. She did not discuss the merits of the 2017 Decision including the onset date of Plaintiff's disability, whether he was blind, or whether he was entitled to SSI. Id.

Rather, to the extent she discussed these issues, she did so only to explain how they related to Plaintiff's new arguments. Id. For example, after noting Plaintiff's alleged blindness could not affect the amount of his DIB payments, the ALJ declined to decide whether Plaintiff was blind because "reexamining [the] issue would not be beneficial or necessary." R. 14. Similarly, she explained that SSA regulations did not permit consideration of settlements in calculating a claimant's earnings, despite Plaintiff's argument to the contrary. R. 14-15. Because the ALJ did not in fact reconsider

the issues related to the 2017 Decision, but instead merely explained the issues considering new evidence, the 2024 Decision was not a *de facto* reopening. See Brown, 921 F.2d at 1237 (ALJ's statements were not a reconsideration of the merits of a prior hearing when ALJ commented on plaintiff's health condition only while considering newly proffered evidence); Bello, 460 F. App'x at 841 (ALJ's discussion of prior determination "for opinion purposes only" did not constitute a *de facto* reopening); Cherry, 760 F.2d at 1189 (ALJ did not *de facto* reopen a prior proceeding even though he "review[ed] all the evidence, including that presented in support of the original application" in deciding not to reopen); Annette S., 2021 WL 9721050, at *7 (ALJ did not *de facto* reopen Plaintiff's prior determination when she considered medical evidence related to the prior determination but declined to reopen it). Thus, the Court lacks jurisdiction to review the decision under the *de facto* reopening exception. See Cash, 327 F.3d at 1257 (finding no jurisdiction to review a decision not to reopen when no *de facto* reopening occurred).

## III. CONCLUSION

In sum, Plaintiff has failed to raise a colorable constitutional claim or show the ALJ *de facto* reopened the 2017 Decision. Therefore, the Court lacks subject-matter jurisdiction to review the determination not to reopen the 2017 Decision. See 42 U.S.C. § 405(g); Cash, 327 F.3d at 1256. Accordingly, the Court **DISMISSES** this case based on lack of subject-matter jurisdiction,

**DENIES as MOOT** Plaintiff's Motion to Expedite Ruling and Motion for Status (docs. 20, 21), and **CLOSES** this civil action.

**ORDER ENTERED** at Augusta, Georgia, this 13th day of November, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA